UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| QUINN'S AUTOMOTIVE INCORPORATED, *et al.*, | ) ) ) | Case No.: 1:06 CV 620 |
| Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| CITY OF PARMA, *et al.*, | ) ) | |
| Defendants | ) | <u>ORDER</u> |

Plaintiffs Quinn's Auto Incorporated ("Quinn's") and Gary Klimo ("Klimo"), the owner of Quinn's, (collectively, "Plaintiffs") allege that Defendant Michael J. Pavlick[1] ("Mr. Pavlick"), aided by Defendant Officer Norman Richard Kekic ("Officer Kekic") and Defendant Officer Jeffrey Allen Wells ("Officer Wells"), both employed by Defendant City of Parma ("City"), improperly took a vehicle from Quinn's property despite the failure by Mr. Pavlick and his wife, Linda Ann Pavlick (together, "Mr. and Mrs. Pavlick" or the "Pavlicks"), to pay for services and storage incurred by Quinn's. (Pls.' Compl. ¶¶ 13-27, ECF No. 1.)

Now pending before the court is Defendants City, Officer Kekic, and Officer Wells' (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 40.) For the reasons stated below, Defendants' Motion is granted.

---

[1]   Mr. Pavlick passed away on March 22, 2006. (Mot. to Note Suggestion of Death Upon R., ECF No. 4.)

## I. FACTS AND PROCEDURAL HISTORY

### A. The Underlying Dispute

In or around February, 2005, Mr. Pavlick contracted with Quinn's to repair and store his 1994 Pontiac Trans Am. (Klimo Aff. ¶ 7, Pls.' Ex. A, ECF No. 41; Pl.'s Compl. ¶ 14, ECF No. 1.) Although the title is not part of the record, Plaintiffs do not dispute that Mr. Pavlick owns the vehicle in question. (Klimo Aff. ¶ 7.) Plaintiffs state that Mr. and Mrs. Pavlick did not pay for the services that Quinn's provided, despite "numerous representations verbally" by both the Pavlicks and their lawyer "that they would in fact pay what was due on said vehicle." (*Id.*) According to Plaintiffs, Mr. and Mrs. Pavlick owe $6,100. (Pl.'s Compl. ¶ 14.)

Klimo avers that, after making multiple attempts to collect payment, he

> commenced the process to gain title to the Pontiac Trans Am, pursuant to Ohio Revised Code section 4505. In that regard, I did send a certified letter to the Defendant Pavli[c]k demanding that he pay what was due on the vehicle, or the vehicle would be re-titled in my name, as was my right.

(Klimo Aff. ¶ 14.) The record does not contain evidence of a certified letter or other efforts Plaintiffs claim to have made to gain title. Subsequently, John Ricotta ("Ricotta"), Pavlick's counsel, called Klimo and "made several representations" that the past due sums would be paid. (*Id.*)

### B. The Instant Suit

On April 12, 2005, the same day that Ricotta called Klimo (*id.*), City of Parma Police Officers Kekic and Wells were dispatched to Quinn's "in order to provide an escort for a male attempting to retrieve his vehicle from the auto body lot." (Kekic Aff. ¶ 3; Wells Aff. ¶ 3.) The officers met Mr. Pavlick at a nearby location, where he provided the title to the vehicle in question as proof of ownership. (Kekic Aff. ¶ 6; Wells Aff. ¶ 6.) The officers then escorted Mr. Pavlick to

Quinn's, where they informed Klimo that they were there to help return Mr. Pavlick's car to him. (Klimo Aff. ¶ 3; Kekic Aff. ¶ 9; Wells Aff. ¶ 9.) The officers state that Klimo told them that he wanted to be reimbursed for past due repairs and storage fees and that he had a legal right to possess the vehicle. (Kekic Aff. ¶¶ 9-10; Wells Aff. ¶¶ 9-10.) Klimo avers that

> [t]o my knowledge on April 12, 2005, there was no Court Order regarding the rights of the parties with regard to the Pontiac Trans Am. At no time prior to April 12, 2005 had any Court action been initiated by either Mr. Pavlick or myself in regard to the Pontiac Trans Am.

(Klimo Aff. ¶ 5.)

Klimo showed the officers documentation listing the repairs and storage and amount due. (Klimo Aff. ¶ 3; Kekic Aff. ¶ 10; Wells Aff. ¶ 10.) Defendants have submitted an invoice from Quinn's, which purports to involve the vehicle in question.[2] (*See* "Invoice," Defs.' Ex. C, ECF No. 40-4.) The document is not signed by either Klimo or Mr. Pavlick, and the line at which a customer authorizes Quinn's to perform work on and store a vehicle is unsigned and undated. (Invoice.) In addition, the invoice lists the "total sale" as $3,706.99, and lists a check paid for that amount. (*Id.*) Consequently, the "total due" is listed as $0.00. (*Id.*)

The officers aver that they "gave Mr. Klimo every opportunity to demonstrate to us that he had a legal right to maintain possession of the vehicle." (Kekic Aff. ¶ 10; Wells Aff. ¶ 11.) Based on the invoice and the title, the officers told Klimo that Mr. Pavlick owned the vehicle and was entitled to remove it if he wanted to do so. (Kekic Aff. ¶¶ 10-11; Wells Aff. ¶¶ 10-11.) The officers advised Klimo that "the dispute over alleged money due was a civil matter and that he could file the appropriate action in a court of law against Mr. Pavlick if he so desired." (Kekic Aff. ¶ 11; Wells

---

[2] The customer's name listed on the invoice is "Jim Pavolic." As Plaintiffs have not challenged Defendants' use of the invoice, the court assumes that the parties do not dispute that this invoice is in fact for Michael J. Pavlick.

Aff. ¶ 11.)

Klimo avers that the officers threatened to arrest him if he did not surrender the vehicle and the keys, and that "[a]s one of the Officers threatened me with arrest, he also reached for his handcuffs, and at a later time he reached for his weapon when he ordered me to get away from the vehicle." (Klimo Aff. ¶ 3.) Klimo states that he eventually surrendered both the vehicle and the keys, and that the only reason he did so was because of "the intimidation of the threat of being arrested and the threat of force by the Defendant Police Officers." (*Id.* ¶ 4.) Mr. Pavlick removed his vehicle from Quinn's and the officers left. (Kekic Aff. ¶ 12; Wells Aff. ¶ 12.)

### C. Procedural History

On March 17, 2006, Plaintiffs filed the instant lawsuit against the City, Officer Kekic, Officer Wells, and the Pavlicks, alleging the following claims: (1) violation of Plaintiffs' civil rights pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (2) City's failure to adequately train and supervise; (3) pattern of corrupt activity in violation of Ohio Revised Code ("O.R.C.") § 292.32; (4) violation of Plaintiffs' lien rights; (5) conversion; (6) trespass; (7) City's ratification of police officer's misconduct and deliberate indifference to Plaintiffs' rights; (8) Mr. and Mrs. Pavlick's breach of contract by failing to pay for services rendered; (9) Mrs. Pavlick's failure to pay in breach of oral contract; (10) Mr. and Mrs. Pavlick's false representations regarding their intent to pay for services rendered; (11) Mr. and Mrs. Pavlick's receipt of a benefit for which they did not pay; and (12) unjust enrichment on behalf of Mr. and Mrs. Pavlick, which was facilitated by Defendants City, Officer Kekic, and Officer Wells. (Pl.'s Compl. ¶¶ 28-67.)

On April 6, 2006, Defendants City, Officer Kekic, and Officer Wells filed a Crossclaim against Mr. Pavlick's Estate for (1) indemnity; and (2) contribution. (ECF No. 16.) On April 7, 2006, Defendant Mrs. Pavlick filed a Counterclaim against Plaintiffs, alleging: (1) fraud; and (2)

- 4 -

deceptive consumer sales practices in violation of O.R.C. §§ 1345.02–.03. (ECF No. 22.) The court's Case Management Conference Order of June 1, 2006, indicates that "Plaintiff settled with the Pavlick Defendants and will be filing a dismissal entry regarding them in 10 days." (ECF No. 27, at 1.) Inasmuch as they have not yet filed a dismissal entry, the court hereby orders that such dismissal entry be filed within 10 days of this Order. Plaintiffs and the remaining Defendants engaged in settlement discussions, but no settlement was ultimately reached. (*See* ECF Nos. 32-35, 37-38.) On October 2, 2006, Defendants City, Officer Kekic, and Officer Wells filed the pending Motion for Summary Judgment on all counts. (ECF No. 40.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

- 5 -

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III. LAW AND ANALYSIS

#### A. Ownership of the Vehicle

Plaintiffs' Opposition to Summary Judgment relies on the erroneous assertion that this case involves repossession of a vehicle. In a repossession situation, an entity takes back property from its owner, usually due to the owner's nonpayment. In Plaintiffs' view, the vehicle that the officers assisted in returning to Mr. Pavlick was rightly owned by Quinn's. However, even construing all facts in Plaintiffs' favor, there is no evidence to suggest that either Quinn's or Klimo owned the vehicle. It is true that Quinn's was retaining possession of the vehicle due to Plaintiffs' allegation that the Pavlicks had not paid for repairs. However, Quinn's retention of the vehicle resulted only

in an artisan's lien on the vehicle, not ownership.[3] (*See* discussion, *infra*, Part II.B.)  At most, Plaintiffs state that they were *attempting* to gain title of the vehicle.  Consequently, Mr. Pavlick was the owner of the car and, therefore, returning the car to him did not constitute repossession.  As such, the repossession cases on which Plaintiffs rely are inapposite.

For similar reasons, *Soldal v. Cook County*, 506 U.S. 56 (1992), also fails to support Plaintiffs' position.  In *Soldal*, county sheriffs assisted the defendant landlord/owner of a trailer park in removing a trailer that was owned by plaintiffs, where the sheriffs knew that the removal was illegal because eviction proceedings had not yet been completed.  *Id.* at 58-59.  The Supreme Court held that the removal of plaintiffs' trailer constituted an illegal seizure under the Fourth Amendment.  While the plaintiffs in *Soldal* owned the trailer that was removed, Plaintiffs here did not own the vehicle that was removed from their lot.  As such, Plaintiffs' reliance on *Soldal* is not well-taken.

### B. Lien on the Vehicle

The parties do not dispute that Plaintiffs had an artisan's lien on the vehicle, which was not extinguished by Plaintiffs' involuntary surrender of the vehicle to the officers and Mr. Pavlick.  *See Mack Fin. Corp. vs. Kenworth of Cincinnati, Inc.*, No. C-790740, 1981 Ohio App. LEXIS 12186, at *12-*13 (Ohio App. Ct. June 3, 1981); *Cleveland Auto Top & Trimming Co. v. Am. Fin. Co.*, 177 N.E. 217 (Ohio 1931).

### C. Counts One and Two: § 1983

To assert a claim under § 1983, a plaintiff must demonstrate that "(1) the conduct in controversy [was] . . . committed by a person acting under color of state law, and (2) the conduct . . . deprive[d] the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the

---

[3] Plaintiffs cite *State v. Montes*, 636 N.E.2d 378, 387 (Ohio 1993), for the proposition that "one need not hold a certificate of title to be in lawful possession of a motor vehicle."  Again, Plaintiffs confuse possession with ownership.

United States." *1946 St. Clair Corp. v. Cleveland*, 550 N.E.2d 456, 458 (Ohio 1990) (citations omitted). Count One alleges that Plaintiffs' Fourth Amendment, procedural due process, and substantive due process rights were violated. (Pls.' Compl. ¶ 29.) Count Two alleges that the City failed to adequately train and supervise Officers Kekic and Wells. (*Id.* ¶¶ 31-33.)

### 1. Against the City

To assert a § 1983 claim against the City, a plaintiff must prove: "1) that he was deprived of a constitutional right; 2) that the municipality had a 'policy'; and 3) that the policy was 'the moving force' behind the constitutional violation." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1000 (6th Cir. 1994) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)). A plaintiff cannot rely on a theory of respondeat superior to hold a municipality liable under § 1983. *Monell*, 436 U.S. at 691-94.

First, the court finds no constitutional violation in the case at bar. As Plaintiffs did not own the vehicle, there could be no illegal seizure or substantive due process violation of Plaintiffs' property. Consequently, the only available constitutional claim that Plaintiffs can make is procedural due process, namely, that the officers failed to provide Plaintiffs with notice or hearing before removing Mr. Pavlick's vehicle from Quinn's. However, the Supreme Court has held that

> an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (quoted in *1946 St. Clair Corp.*, 550 N.E.2d at 459). Therefore, the fact that Plaintiffs have a lien on the vehicle means that they still have an avenue for being reimbursed by the Pavlicks, or for repossessing the vehicle, for repairs made. As such,

- 8 -

Plaintiffs' procedural due process claim fails.

With regard to Count Two, the Supreme Court has set forth the standard for a § 1983 claim based on a municipality's failure to train or supervise its police officers:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . .
> *Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. . . . The issue . . . is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." . . . .
>  . . . . [T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.
> . . . .
> Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

*City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989).

Even assuming, *arguendo*, that a constitutional violation existed, Plaintiffs have not shown any custom or policy by the City that acts as the moving force behind such violation. Plaintiffs argue that the City has a custom or policy of training police officers to "keep the peace" and/or "escort" individuals in the manner of the instant case (*e.g.*, threatening to arrest Klimo, reaching for handcuffs and weapon). However, Plaintiffs have produced no expert testimony or other evidence to support its argument that the City had such a policy. Even assuming that the officers acted as Plaintiffs allege in a specific instance is insufficient to establish that the City had a policy or custom for officers to act in that manner. Therefore, Plaintiffs' § 1983 claims against the City fail.

2. Against Officers Kekic and Wells

In their Answer, Officers Kekic and Wells asserted the defense of qualified immunity. (Affirmative Defenses ¶ 4, ECF No. 16, at 7.) Under the doctrine of qualified immunity, "government officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is available to police officers acting in their official duties. *Anderson v. Creighton*, 483 U.S. 635 (1987). To determine whether an official is entitled to qualified immunity, the court undertakes the following analysis:

> [First] Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . .
> [Second] If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001). In the instant case, the court has determined that none of Plaintiffs' constitutional rights were violated. However, even assuming, *arguendo*, that the officers' assistance in removing the vehicle from Quinn's lot and their alleged threats of arrest constitute violations of Plaintiffs' constitutional rights, the officers are still immune from suit because no "clearly established" right existed.

The Supreme Court has held that the inquiry of whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition" and must be defined at "the appropriate level of specificity." *Id.* at 201, 202 (quotations omitted). A right is clearly established where "it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." *Id.* Plaintiffs cite *Soldal* as well as cases in which police officers improperly repossessed property for their argument that the officers violated a "clearly established" law by allowing Mr. Pavlick to take the vehicle despite Klimo's lien. As stated above, those cases are inapplicable to the case at bar because Mr. Pavlick, not Klimo, owned the vehicle. In the instant case, the officers looked at the vehicle's title and the invoice from Quinn's, which indicated that the vehicle belonged to Mr. Pavlick and that he did not owe any money for repairs. The officers then determined that Mr. Pavlick could take his car. Construing the facts in Plaintiffs' favor, they then threatened Klimo with arrest if he did not cooperate. The court finds that it would not be clear to a reasonable officer that it was unconstitutional to return a car to its owner in this circumstance, nor that it was unlawful to use the threat of arrest to prevent a person from interfering in what appeared to be a lawful return of property. None of the cases prior to the instant incident that involved repossession or removing property from its lawful owner would have alerted the officers to the fact that their conduct, which assisted a lawful owner in gaining possession of his property, was unconstitutional. Therefore, Plaintiffs have failed to show that the officers violated a clearly established constitutional right, and Officers Kekic and Wells are thus immune from suit.

Accordingly, the court grants summary judgment to the City and Officers Kekic and Wells on Plaintiffs' § 1983 claims.

### D. Count Three: RICO

Plaintiffs contend that Defendants have engaged in a pattern of corrupt activity (also known as a "RICO" claim) in violation of O.R.C. § 2923.32, by acting in a conspiracy to violate sections § 2913.02 (theft), § 2913.42 (tampering with records), and § 2913.51 (receiving stolen property). (Pls.' Compl. ¶¶ 35-36.) O.R.C. § 2923.32 provides, in pertinent part:

> (A)(1) No person employed by, or associated with, any enterprise
> shall conduct or participate in, directly or indirectly, the affairs of the

- 11 -

>> enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

To sustain a valid RICO claim, a plaintiff must show:

> (1) the conduct of the defendant . . . involve[s] the commission of two or more specifically prohibited state or federal criminal offenses; (2) the prohibited state or federal criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.

*Wuliger v. Liberty Bank, N.A.*, No. 3:02 CV 1378, 2006 U.S. Dist. LEXIS 325, at *13 (N.D. Ohio 2006) (quoting *Salata v. Vallas*, 823 N.E.2d 50, 53 (2004). O.R.C. § 2923.31(E) defines "pattern of corrupt activity" as "two or more incidents of corrupt activity . . . that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

Plaintiffs cannot meet the elements of a RICO claim. In the instant case, there is no evidence of theft or receipt of stolen property because the vehicle in question did not belong to Klimo. In addition, Plaintiffs have not alleged, nor is there evidence to suggest, that Defendants tampered with any records. Consequently, Plaintiffs have failed to satisfy the first prong. Furthermore, construing the facts in Plaintiffs' favor, the facts at issue allege only one incident, which is insufficient to constitute a "pattern," so Plaintiffs have also failed to satisfy the second prong. Therefore, the court hereby grants summary judgment to the City and Officers Kekic and Wells on this claim.

**E. Counts Four, Five, and Six: Violation of Artisan's Lien, Conversion, and Trespass**

In Count Four, Plaintiffs allege that "the Defendants have used improper means to acquire property, which the Plaintiffs had a lawful right to . . . [and] Defendants have violated through improper means, Plaintiffs' Artisan's, Tradesman, Mechanic's, and/or Laborer's lien rights . . . ."

- 12 -

(Pls.' Compl. ¶¶ 39-40.) Counts Five and Six allege conversion and trespass, respectively. (*Id.* ¶¶ 42, 44.) For the reasons discussed below, the court finds that the City and Officers Kekic and Wells are immune from Plaintiffs' claims for violation of Plaintiff's artisan's lien, conversion, and trespass. As such, the court does not need to determine whether Plaintiffs have proven the elements of the torts alleged in these counts. Therefore, the court grants summary judgment for the City and Officers Kekic and Wells on these claims.

### 1. Political Subdivision Immunity

O.R.C. § 2744.02(A)(1) provides, in relevant part:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

O.R.C. § 2744.01(F) defines "political subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." As such, the City of Parma constitutes a political subdivision.

Next, the court must determine whether any exception to the general grant of immunity applies. *Greene County Agric. Soc'y v. Liming*, 733 N.E.2d 1141, 1146 (Ohio 2000). Of the exceptions, only two require analysis.[4] First, the statute provides that a political subdivision is liable

---

[4] The other exceptions involve the negligent operation of a motor vehicle by an employee of the political subdivision (O.R.C. § 2744.02(B)(1)); the failure to maintain public roads or grounds within the political subdivision and keep them free from nuisance (O.R.C. § 2744.02(B)(3)); and the unsafe conditions or physical defects of buildings or grounds used for a government function (O.R.C. § 2744.02(B)(4)). None of these exceptions is relevant to the facts of the instant case.

- 13 -

for damages "caused by the negligent performance of acts by their employees with respect to *proprietary functions* of the political subdivisions." O.R.C. § 2744.02(B)(2) (emphasis added). O.R.C. §§ 2744.01(C) and (G) establish that functions are either "governmental functions" or "proprietary functions" and that these categories are mutually exclusive. *See Greene County Agric.*, 733 N.E.2d at 1146. Government functions include "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection." O.R.C. § 2744.01(C)(2)(a). Consequently, the instant case involves a government function, which necessarily means that it does not involve a proprietary function, and therefore the exception does not apply. Second, the statute provides that "a political subdivision is liable . . . when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code . . . ." O.R.C. § 2774.02(B)(5). Plaintiffs have not shown, nor does any evidence indicate, that any Ohio statute expressly imposes liability in the instant case. As such, no exception applies, and therefore the City is immune from Plaintiffs' claims for violation of artisan's lien, conversion, and trespass.

### 2. Employee Immunity

Under O.R.C. § 2744.03(A)(6), a political subdivision employee acting within the scope of his duties is immune from liability, unless one of the following exceptions applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . .

*Id.* A police officer constitutes a political subdivision employee, and the performance of police duties constitute governmental employment. O.R.C. §§ 2744.01(B), (C)(2)(a). Furthermore, none of the exceptions to immunity apply to the instant case. First, it is undisputed that Officers Kekic and Wells were acting in the scope of their employment during the interaction with Klimo on

- 14 -

Quinn's premises. *(See* Pls.' Compl. ¶ 26.) Second, there is no evidence that either Officer Kekic or Officer Wells acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Courts have defined these terms as follows:

> Malicious purpose encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.
>
> Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.
>
> Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. The term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk. As to all of the above terms, their definitions connote a mental state of greater culpability than simple carelessness or negligence.

*Jacobs v. Village of Ottawa Hills*, 159 F. Supp. 2d 693, 699 (N.D. Ohio 2001) (quoting *Caruso v. State*, 737 N.E.2d 563, 567 (Ohio App. Ct. 2000)). Construing the facts in Plaintiffs' favor, the officers' threat to arrest Klimo and their reach for their handcuffs and weapons does not create a genuine issue of material fact as to whether the actions rose to the level of maliciousness, bad faith, wantonness, or recklessness. Third, Plaintiffs have not shown, nor does any evidence indicate, that any Ohio statute expressly imposes liability in the instant case. Therefore, Officers Kekic and Wells are immune from Plaintiffs' claims for violation of artisan's lien, conversion, and trespass.

### F. Count Seven: City's Misconduct

Count Seven alleges that the City "has acted in reckless disregard of the rights of the Plaintiffs and has ratified the misconduct of Parma police officers" and "had a practice, policy and

- 15 -

procedure of training which included improper use of threat of arrest" that is unconstitutional or, alternatively, "amounted to a deliberate indifference of the rights of the Plaintiffs." (Pls.' Compl. ¶¶ 46, 47.) The court finds that this count reasserts claims already rejected in the within Order. In particular, Plaintiffs have not shown evidence of a relevant practice, policy, or procedure by the City. As such, the court grants summary judgment for Defendants on this claim.

### G. Counts Eight, Nine, Ten, and Eleven

Defendants assert that Counts Eight, Nine, Ten, and Eleven "do[] not state any claim against the City of Parma and/or Officers Wells or Kekic." (Def.'s Mot. Summ. J. at 30.) As stated above, these Counts involve the money that the Pavlicks allegedly owe Plaintiff Quinn's for automotive work that Quinn's undertook on the vehicle. Consequently, the court grants summary judgment for Defendants City, Officer Kekic, and Officer Wells on these claims.

### H. Count Twelve

Defendants argue that Count Twelve, for unjust enrichment, "does not state any claim against the City of Parma and/or Officers Wells or Kekic." (Def.'s Mot. Summ. J. at 30.) However, Count Twelve also states "[t]hat the unjust enrichment of the Defendants, Mr. and Mrs. Pavlick[,] *was facilitated by* the Defendants, City, Kekic and Wells." (Pl.'s Compl. ¶ 67) (emphasis added.) However, as discussed above in relation to other claims, even when construing the facts in Plaintiffs' favor, there is no evidence that the police officers or the City acted improperly in the context of the situation presented in the instant case.

### I. Plaintiff Klimo's Standing

Defendants allege that Klimo has no standing against the City or Officers Kevic or Wells because the vehicle was taken from Quinn's, an incorporated corporation, not from Klimo as an individual. Defendants state broadly that "Klimo personally has no legal cause of action in tort,

contract, under civil rights law or otherwise . . . ." (Defs.' Mot. Summ. J. at 14.) As the court has dismissed each claim against the City and Officers Kekic and Wells on separate grounds, the court declines to address the issue of standing.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is (ECF No. 40) granted. As the record indicates that Plaintiffs have settled with Mrs. Pavlick and the estate of Mr. Pavlick, the court also orders that the Pavlicks file a dismissal entry within 10 days of this Order. The City and Officers' crossclaim against Mr. Pavlick's Estate is thus moot. Therefore, no claims remain.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

October 31, 2007

contract, under civil rights law or otherwise . . . ." (Defs.' Mot. Summ. J. at 14.) As the court has dismissed each claim against the City and Officers Kekic and Wells on separate grounds, the court declines to address the issue of standing.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is (ECF No. 40) granted. As the record indicates that Plaintiffs have settled with Mrs. Pavlick and the estate of Mr. Pavlick, the court also orders that the Pavlicks file a dismissal entry within 10 days of this Order. The City and Officers' crossclaim against Mr. Pavlick's Estate is thus moot. Therefore, no claims remain.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

October 31, 2007